POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**STANFORD CHOPPING, INC.**,<br><br>        Debtor.<br>_____<br><br>LISA HOLDER, in her capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Stanford Chopping, Inc.,<br><br>        Plaintiff,<br><br>    v.<br><br>AUGUSTAR LIFE ASSURANCE CORPORATION formerly known as OHIO NATIONAL LIFE ASSURANCE CORPORATION, a subsidiary of CONSTELLATION INSURANCE, INC.; and DOES 1 through 25,<br><br>        Defendant.<br>_____ | Case No. 22-11403-B-7<br><br>Adv. Proc. No. 24-01023-B<br><br>Docket Control #RHV-2<br><br>Date: January 15, 2025<br>Time: 11:00 a.m.<br>Place: U.S. Courthouse<br>       2500 Tulare Street<br>       Courtroom 13, Fifth Flr.<br>       Fresno, California<br><br>Honorable René Lastreto II |

**MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS**

_____

Estela O. Pino, attorney for Lisa Holder, Plaintiff.

Ryan Hunter Voss, CHITTENDEN, MURDAY & NOVOTNY LLC, for AuguStar Life Assurance Corporation, Defendant.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

1

**INTRODUCTION**

AuguStar Life Assurance Corporation ("ALAC") challenges the Chapter 7 Trustee's claims that ALAC received avoidable transfers of premium payments from Debtor Stanford Chopping, Inc. ("Stanford") on a life insurance policy in which Stanford was nether the owner or beneficiary. Trustee's theories are largely carried by the Bankruptcy Code's strong arm powers under 11 U.S.C. § 544(b). Trustee alleges the transfers were actually fraudulent or constructively fraudulent under the relevant federal and state statutes.

ALAC's motion to dismiss the complaint asserts that Stanford received adequate consideration for the premium payments; that ALAC (or its predecessor) was discharged from liability by the state court when it interpleaded the insurance policy funds; and that Trustee failed to name other necessary parties under Fed. R. Civ. Proc. 19 (Fed. R. Bank. Proc. 7019).

Finding the complaint sufficiently alleges the basis for avoiding the transfers and that Trustee properly named the party defendant, the court **DENIES** the motion.


**I.**

**A.**

Stanford began its' bankruptcy journey in Chapter 11 Subchapter V August 17, 2022. About two months later, the case was converted to Chapter 7. Lisa Holder was the Subchapter V Trustee and became the Chapter 7 Trustee after conversion. ("Holder").

///

The following is generally from the allegations in the complaint.

During her tenure as Chapter 7 Trustee, Holder filed the complaint in this adversary proceeding against ALAC seeking to avoid certain transfers from Debtor to ALAC totaling $207,500.00 alleging that the transfers were either actually fraudulent or constructively fraudulent under 11 U.S.C. § 548 and the California Uniform Voidable Transactions Act (C.C.C. § 3439, *et seq.*)("the CUVTA"). Because the IRS and Small Business Administration ("SBA") have claims that are debts to the United States, Holder also asserts that the premium payments are recoverable under Federal Debt Collection Procedures (28 U.S.C. § 3304) and 11 U.S.C. § 550(a)(1). The transfers were premium payments on a life insurance policy paid by Stanford.

To understand the gravamen of the Complaint, it is helpful to review the dramatis personae, which includes three relatives of the Stanford family. According to the Complaint and so far undisputed by ALAC, Jack Stanford ("Jack") was Stanford's CEO as of the petition date. Jack's son, Alex Stanford ("Alex"), was the Secretary and a director of Stanford. Larry Stanford ("Larry"), Jack's brother and Alex's uncle, was, prior to his death, the CFO and a director of Stanford. Jack, Alex, and Larry were all insiders of Stanford, with Jack owning 37.10% of the company stock, Larry owning 50%, and Alex owning 12.90%.

The Complaint alleges that, on August 8, 2014, ALAC's predecessor, Ohio National Life Assurance Corporation ("ONLAC"), issued a life insurance policy ("the Policy") insuring Larry's life with a death benefit of $1 million, with Alex in his

individual capacity as the owner of the Policy and the sole beneficiary. The $2,500 monthly premium was paid by Stanford. The policy was ostensibly for the purpose of providing funds for Alex to purchase Larry's shares in the event of Larry's death. The total amount of the transfers (premiums) made by Stanford was $207,500.00 paid to both ONLAC and ALAC. The Policy accumulated a cash value which was not disclosed as Debtor's asset. On July 7, 2021, about a year before the petition date, Larry died in an auto accident.

The Complaint further alleges that Stanford was insolvent while it was paying the premiums for the Policy. Stanford, Holder alleges, was pursuing an expansion plan whereby it purchased a considerable amount of expensive equipment ("the Expensive Equipment") that it could not afford and so financed the purchases through a series of promissory notes and security agreements specified in the complaint.

**B.**

Jurisdiction is founded on 28 U.S.C. § 1334(b) and §157(a). This is a proceeding that the Bankruptcy Court can hear and finally determine under 28 U.S.C § 157 (b)(2)(H).

**II.**

**A.**

Rule 12(b)(6) and (7) state in relevant part:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

4

…

  (6) failure to state a claim upon which relief can be granted; and
  (7) failure to join a party under Rule 19.

Fed. Rules Civ. Proc. 12(b)(6)-(7)(incorporated by Fed. R. Bankr. P. 7012(b).

  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

  The Supreme Court has established the minimum requirements for pleading sufficient facts. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

  In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations as true and construes them, along with all reasonable inferences drawn from them, in the light most favorable to the non-moving party. The court need not, however, accept legal conclusions as true. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.

*Consol. Res., Inc. v. Dro Barite, LLC (In re Don Rose Oil, Inc.)*, 614 B.R. 358, 366 (Bankr. E.D. Cal. 2020)(citations omitted).

  The court need not accept conclusory allegations as true; rather it must "examine whether conclusory allegations follow from the facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F. 2d 1115, 1121 (9th Cir. 1992)

  As a threshold matter, ALAC's motion does not dispute the facts as outlined above, but rather argues that those facts do not state a claim against ALAC for the following reasons:

///

5

1. The Complaint fails to plead facts that indicate the presence of any of the factors listed in 28 U.S.C. § 3304(b)(2) which might demonstrate "actual intent to hinder, delay, or defraud a creditor."

2. The facts alleged show that the Policy is a "Key Man Policy," and consequently, Stanford received consideration for the insurance premiums it paid.

3. ALAC was discharged from liability by reason of an order issued on December 6, 2021, by the Madera County Superior Court in the case of *Callie Styles et al v. Jack Stanford, et al.,* Case No. MCV085835 ("the Madera County Case"), which discharged ALAC's predecessor from liability relating to the policy proceeds or arising out of the policy. Doc. # 53.

1.

The complaint includes sufficient allegations as to actual intent to defraud. The Trustee's response delineates the relevant 28 U.S.C. § 3304(b)(2) factors as follows:

(b) Transfers without regard to date of judgment.

    (1) Except as provided in section 3307 [28 USCS § 3307], a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—

        (A) with actual intent to hinder, delay, or defraud a creditor; or

        (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—

            (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

            (ii) intended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

    (2) In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether—

        (A) the transfer or obligation was to an insider;

6

```
        (B) the debtor retained possession or control of the
            property transferred after the transfer;

        (C) the transfer or obligation was disclosed or
            concealed;

        (D) before the transfer was made or obligation was
            incurred, the debtor had been sued or threatened with
            suit;

        (E) the transfer was of substantially all the debtor's
            assets;

        (F) the debtor absconded;

        (G) the debtor removed or concealed assets;

        (H) the value of the consideration received by the
            debtor was reasonably equivalent to the value of the
            asset transferred or the amount of the obligation
            incurred;

        (I) the debtor was insolvent or became insolvent
            shortly after the transfer was made or the obligation
            was incurred;

        (J) the transfer occurred shortly before or shortly
            after a substantial debt was incurred; and

        (K) the debtor transferred the essential assets of the
            business to a lienor who transferred the assets to an
            insider of the debtor.
```

28 U.S.C.S. § 3304 (emphasis added); *See* Doc. #55 (Plaintiff's Response).

ALAC argues that the Complaint is bereft of pleadings regarding the § 3304(b)(2) factors other than (b)(2)(H). The court disagrees. The complaint, in the court's view, contains facially plausible allegations that:

    1.    Debtor owed a debt to the IRS, an agency of the Government of the United States of America, thereby bringing this matter into the ambit of § 3304(b), a fact which ALAC does not dispute.

    2.    Debtor received no value in exchange for its premium payments as the policy was owned by Alex, who was also the sole beneficiary.

3. The premium payments made by Debtor were for the benefit of Alex, an insider.

4. The premium payments were made by Debtor shortly before or during the time that Debtor was incurring substantial debt.

5. There was no public record of the premium payments, nor was the cash value of the Policy disclosed as an asset of the Debtor, which made all the premium payments despite having no obligation to do so.

ALAC argues that consideration was given to Stanford because the policy was a "Key Man" policy that are uniformly provided by corporations for key personnel. In support of its "Key Man" argument, ALAC relies on *Manning v. Wallace (In re First Fin. Assocs., Inc.)* 371 B.R. 877,905 (Bankr. N.D. Ind. 2007)("*First Financial*").

In *First Financial,* the debtor-corporation, at the direction of its principal Darrell E. Shults ("Shults"), took out several term life insurance policies on himself which were paid for by the debtor-corporation with the company as beneficiary on some policies and insiders as beneficiaries on others. *First Financial*, 371 B.R. at 888-90. After the company became insolvent, Shults modified one policy so that 60% of the benefits would go to Dorothy Wallace ("Wallace"), Shults' live-in fiancé who was also an officer in the debtor-corporation. *Id.* Shults took his own life a few months later, and Wallace duly collected the proceeds. *Id.* The trustee brought an adversary proceeding against Wallace seeking, *inter alia*, recovery from Wallace of all the premiums paid by the company. Id.

Following a two-day trial, and some years of litigation, the *First Financial* court issued its findings of fact and conclusions of law and ruled in favor of Wallace in part as to

8

the issue of the premiums. *Id.* at 905-07. In particular, the court rejected the trustee's position that a closely-held corporation that is undercapitalized and insolvent "hinders, delays or defrauds" its creditors whenever it pays premiums for a life insurance policy which insures the life of its principal for the benefit of beneficiaries other than the corporation or its creditors. *Id.*

As Holder notes, *First Financial* is distinguishable for several reasons. First, the opinion is from an Indiana bankruptcy court and thus is not binding on this court. Second, the premium payments at issue in *First Financial* totaled just over $17,000.00 in the aggregate for five separate policies, all of which were term policies with no cash value. *Id.* at 905-12. In the present case, the Complaint alleges, and ALAC does not dispute, that the premiums which Debtor paid for the Policy totaled $207,500.00 for a universal life insurance policy with a substantial cash value. Third, the *First Financial* opinion presented findings of fact and conclusions of law at the end of a two-day trial. In the context of this motion, however, no facts have been decided, and the court is obligated to accept all factual allegations as true and construe them, along with all reasonable inferences drawn from them, in the light most favorable to Holder. Fourth, in *First Financial*, the trustee sought to recover premium payments from the beneficiary who collected the insurance proceeds. *Id.* Here, however, Trustee seeks to recover from the insurance company to whom the Debtor made the fraudulent transfer. Accordingly, *First Financial* is distinguishable.

///

ALAC neglects to mention that not all policies involved in *First Financial* were found as supporting sufficient consideration to the debtor corporation. One policy involved was applied for and owned by an insider and had the president as the beneficiary. The court in *First Financial* engaged in a factual analysis to determine if the owner was indeed a "key person." See, *First Financial* pg. 908-909. Such analysis is beyond the scope of the analysis necessary on this motion.

Finally, in the court's view, ALAC's "Key Man" arguments misapprehend the nature of "Key Man" insurance policies. While not a controlling case, *Estate of Harris v. Abbott Acquisition Co., LLC* from a Pennsylvania District Court ably describes the concept:

> A key man insurance policy is a common vehicle used by companies, corporations, and partnerships to provide funds for expenses occasioned on the death of the key man, such as a buy out of a partner or member's share in the entity. *See* BLACK'S LAW DICTIONARY at p. 869 (6th ed. 1990) (defining "key man insurance" as a "[t]ype of insurance coverage purchased by companies to protect them on the death or disability of a valued employee or by partnership to provide for funds with which to buy out the interest of such partner on his death or disability."); Rev. Rul. 2008-42, 2008-30 I.R.B. 175 (2008)("X purchases an employer-owned life insurance contract on the life of one of its employees in order to cover expenses the company would incur as a result of the death of the employee (also known as a key-man policy)."); *see also Anthony v. Perose*, 455 Pa. 233, 312 A.2d 360, 362 (Pa. 1973) (referring to the non-deductibility of premium payments made by an entity for a "key man insurance" policy insuring the life of an employee where the entity is a beneficiary)[.]

No. 16-243, 2017 U.S. Dist. LEXIS 133843, at *31-33 (W.D. Pa. Aug. 22, 2017).

The insurance law treatises consulted by the court seem to agree. 2 BUSINESS INSURANCE LAW AND PRACTICE GUIDE §12.04 (Matthew

Bender 2024) ["'Key man' insurance is designed to protect a business from the loss of one of its most valuable assets, human capital. Thus, it is meant to benefit the business and not the insured individual."]; INSURANCE COVERAGE DISPUTES §12-05 (Law Journal Press 2024) ["Key man insurance [is] life insurance purchased by a corporation on the most essential of its officers/employees."]

　　　　As the foregoing clarifies, an important aspect of a true Key Man policy is that the *company* (in this case, the Debtor) purchased the policy, made the payments, *and is the beneficiary.* Holder argues persuasively that the fact that Debtor paid for a policy for which the beneficiary was an insider removes it from the scope of a Key Man policy. Accordingly, taking the allegations as true and viewing them in the light most favorable to the non-movant, the court accepts for 12(b)(6) purposes that the insurance premiums paid by Debtor were paid without consideration.

　　　　At oral argument, Trustee's counsel cited a recent Supreme Court decision which was not included in the briefs, *Connelly v. United States*, 602 U.S. 257 (2024). The court gave both parties the opportunity to submit a very short brief discussing the *Connelly* case. Both parties complied with the court's order and timely submitted briefs.

　　　　The issue addressed by the Court in *Connelly* was whether life insurance proceeds that will be used to redeem a decedent's shares must be included when calculating the value of those shares for purposes of federal estate tax. *Id.* at 263. The Court held a corporation's contractual obligation to redeem an insider's shares did not diminish the value of those shares upon

11

decedent's death. *Id.* at 267. The Court noted in dicta that the principals in *Connelly* could have structured a stock redemption differently. *Id.* The Court reasoned that because redemption obligations are not necessarily liabilities that reduce a corporation's value for purposes of the federal estate tax, the value of the corporation would be unaffected by the payment of the policy proceeds since the corporation purchased the policy. There is no holding by the Supreme Court that is germane to the issue of creditor loss by corporate premium payment on an asset that is not beneficial to the corporation.

Both parties assert *Connelly* is distinguishable and not controlling here. Plaintiff Trustee focuses on "the juxtaposition" of the insurance/redemption structure in *Connelly* compared to the allegations here. But *Connelly* says nothing about the flow of consideration in traditional or unusual "keyman insurance" scenarios.

Defendant ALAC attempts to contend that *Connelly* supports "the legitimacy of the interest" of the family wanting to maintain stock ownership. *Connelly* made no such judgment. Indeed, ALAC's argument hinges on an unproven premise: the life insurance was purchased to ensure the corporation could continue in the family. Doc. #61, p. 3. Now, that fact is undetermined.

Proof at trial may reveal a different scenario than what is plead by Holder here. But for purposes of this motion, and construing the allegations as we must, there are sufficient facts here to establish an actual fraudulent conveyance.

///

///

**2.**

ALAC does not directly challenge Holder's second through seventh claims which include allegations of constructive fraud and limit recovery to four and two year "reach backs." Since the court has found sufficient allegations for actual fraudulent transfers based on lack of consideration to the debtor corporation and other factors, the remaining claims survive this motion to dismiss.

**B.**

ALAC also argues that the complaint should be dismissed because Holder did not properly join other parties as defendants. The rationale offered by ALAC is based on the effect of ONALAC's interpleading policy proceeds with the Madera County Superior Court through a cross-complaint in an action brought by and between members of the Stanford family. There is no basis to dismiss the complaint based on non-joinder.

ALAC's 12(b)(7) arguments arise from the disposition of the Madera Court Case, which was a suit brought by Callie Styles and Lacey Stanford against Larry, Alex, and ONLAC seeking the proceeds of the Policy. (Doc. #49, ##52-53.) In an order dated December 6, 2021 (Doc. 52), the Madera Superior Court entered an Order discharging ONLAC from any further liability arising out of the Life Insurance Policy pending the deposit of the disputed funds into the Court's registry. ALAC argues:

> Once a person who is subject to conflicting claims for money files an interpleader action and admits liability and deposits the money with the court, they are discharged from liability. *Principal Life Ins. Co. v. Peterson*, 156 Cal. App. 4th 676, 682, 67 Cal. Rptr. 3d

13

584, 588 (2007). Thus, to the extent Trustee's claim rests on the Life Insurance Policy, ALAC has been discharged to that liability and Trustee is barred under the Madera County Order and CA Civ. Pro. § 386 from pursuing her claims against ALAC in this action. Moreover, having deposited the funds, California Insurance Code § 10172 fully discharges ALAC for any and all claims under the Life Insurance Policy.

Doc. #53. ALAC's arguments are unavailing.

First, ALAC wants the court to take judicial notice of two orders of the Madera County Superior Court but does not specify what facts or facts are properly subject to judicial notice. Judicial notice under Fed. R. Evid 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201 (b). A fact is "not subject to reasonable dispute" if it is "generally known" or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Id.* "Accordingly, a court may take judicial notice of a matter of public record (the orders here) without converting a motion to dismiss to a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F. 3d 988,999 (9th Cir. 2018) quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

But accuracy does not end the inquiry. The court must consider – and identify – which fact or facts it is noticing. Just because the document itself is subject to judicial notice, does not mean every assertion of fact within that document is judicially noticeable for its' truth. *Khoja* at pg. 1001. The orders do discharge ONLAC from claims to the proceeds deposited. The orders also state how the proceeds are to be divided among the parties to the litigation. But the factual assumption that

14

ALAC is discharged from liability to the Trustee here as a result is absent.

Second, Debtor was not a party to the Madera Superior Court Action, which was apparently brought by the administrator of Larry's estate against Jack, Alex, and the insurance company. *Id.* During the State Court Action, ONLAC filed a motion for interpleader which the state court granted. Doc. #52, #53. ONLAC deposited $1 million (the amount of the insurance proceeds) minus its attorneys' fees into an interest-bearing account pending resolution of the claims against the other parties. *Id.* The state court later issued an order discharging ONLAC from liability "to any party to this action relating to the proceeds or arising out of Policy number C7105600." Doc. #52 (Exhibit C – Order Discharging ONLAC).

Those facts distinguish this case from that cited by ANLAC, *Principal Life Insurance Co. v. Peterson*, 156 Cal. App. 4th 676 (2007). There, an insurance company brought an interpleader action against a decedent's husband and the administrator of decedent's estate. Decedent's husband was convicted of murdering the decedent. The actual holding of the case was affirming a summary judgment ruling in favor of the administrator that the judgment of first degree murder against decedent's husband was evidence that he intentionally and feloniously killed the decedent. *Id.* at 696. So, decedent's husband is excluded from recovery under the terms of the policy. *Id.* The court in *Peterson* did discuss that the interpleader action was resolved by a stipulated order. The stipulation also provided that decedent's husband and the administrator "will settle or litigate

amongst themselves the respective rights and claims to proceeds under the Policy…" *Id.* at 682. So, the relief granted in *Peterson* was limited to the parties to the interpleader action and the proceeds of the policy at issue. *Peterson* neither discussed nor held any party liable for collection of insurance premiums.

Third, and more germane, Trustee is not seeking any funds connected with the *proceeds* of the Policy. Rather, Trustee seeks recovery of the *premiums* paid by the Debtor for the Policy which did not benefit the Debtor. Thus, the discharge of ONLAC through interpleader is simply irrelevant.

ALAC also cites Cal. Inc. Code § 10172 to argue that since ONLAC paid the proceeds of the policy it no longer has liability. That section is of no assistance to ANLAC here. That provision discharges an insurer when the proceeds of, or payment under a policy become payable; and the insurer makes payment in accordance with the policy terms. The payment fully discharges the insured from all claims under the policy. Again, this is not a claim for insurance policy proceeds.

ALAC argues that "[t]o the extent Trustee's Complaint indicates fraudulent conduct, it does so as to Jack Stanford and Alex Stanford, both of whom were parties in the Madera County action." Doc. #53. ALAC also notes that the insurance proceeds were distributed amongst Krone, N.A., Inc.; Debbie Stanford (Alex's mother); and Callie Styles in her capacity as administrator of Larry's estate. *Id*. ALAC suggests without reference to anything in the record that "[o]n information and belief, these individuals and/or their attorneys participated in

16

1 portions of the Bankruptcy action underlying Trustee's adversary
2 claim." There is nothing in the allegations of the complaint
3 supporting that factual assertion by ALAC in the motion.
4     To reiterate, however, the Trustee does not seek recovery of
5 any funds from the insurance proceeds. The dispute is over the
6 premiums which were paid by Debtor to ALAC (or its predecessor
7 entities). The court is not persuaded that any other parties are
8 necessary to this action such that it is subject to dismissal
9 under Rule 12(b)(7).  ANLAC is free to add parties it feels need
10 to be added by way of third-party complaint should it choose to
11 do so.
12
13 **c.**
14     ANLAC offhandedly argued Holder purposely delayed in
15 bringing this action such that the estate's recovery should be
16 barred.  Without pointing to any facts alleged in the complaint,
17 ANLAC states in their argument that the Trustee "knew" of the
18 interpleaded insurance proceeds in the Madera Superior Court
19 action as early as August 2022 when Holder was originally
20 appointed.  That was after the 2021 order of the Superior Court
21 discharging ONLAC from any further liability concerning the
22 policy proceeds and before disbursement of those funds by the
23 Superior Court last year.  ANLAC provides no factual basis for
24 such a claim even if it was appropriate on a motion to dismiss
25 under Fed. R. Civ. P. 12(b)(6).  It is not.  Any argument
26 asserted by ANLAC is more appropriately considered through an
27 affirmative defense under Fed. R. Civ. P. 8(c) (Fed. R. Bankr. P.
28 ///

17

7008).  It is not appropriate to examine on a motion such as this.

**CONCLUSION**

In the case's current posture (i.e. consideration of a 12(b)(6) motion), the only relevant question is whether the complaint contains factual assertions that, if accepted as true, "state a claim to relief that is plausible on its face." *Consol. Res., Inc.*, 614 B.R. at 366. Whether Alex and Jack have engaged in fraudulent conduct in their individual capacities is not germane at this juncture to the question of whether *the Debtor* made the transfer to ALAC in the form of $207,500.00 in premium payments without receiving a reasonably equivalent value in exchange and while Debtor was or was about to become substantially insolvent.

An ancillary question is whether, for 12(b)(6) purposes, the complaint alleges the existence of § 3304(b)(2) factors which may determine the presence of actual intent under § 3304(b)(1). Per the allegations in the Complaint, these transfers were made for the benefit of an insider, that neither the transfers nor the cash value of the insurance policy were disclosed, that there was no consideration received by Debtor for the premium payments, and that the premium payments were made against the backdrop of a substantial acquisition of new debt. Accepting the allegations as true, the court accepts that § 3304(b)(2) factors appear to exist.

The Trustee has joined the necessary parties, thus there is no merit to the joinder challenge under Civ. Rule 12 (b)(7).

Accordingly, ALAC has failed to meet its heavy burden under Rule 12(b). The motion to dismiss is **DENIED**.[1] The court will issue a conforming order.

Dated: Feb 07, 2025

By the Court

*/s/ René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

---

[1] The foregoing are the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52 (Fed. R. Bankr. P. 7052). If any factual finding is deemed a conclusion of law or vice versa, it is adopted as such. See also Fed. R. Civ. Proc. 52(a)(3)(Providing the court is not required to state findings or conclusions on a Rule 12 motion.)

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

    The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Estela O. Pino
1520 Eureka Rd., Suite 101
Roseville, CA 95661

Ryan Hunter Voss
303 W. Madison St., Suite 2400
Chicago, IL 60606